The next case for argument is 16-2123, Hime v. Shulkin. Whenever you're ready, please. I please the Court, I'm Senator Bishop representing the veteran Richard B. Hime in this case. This case involves a new and expanded interpretation of the statute and regulation regarding clear and unmistakable error. It's based on a complete decision of law. There's no question or controversy here regarding the facts in this case. Facts are clear, everyone agrees on what the facts are. So what's the legal issue? The legal issue is whether or not the Veterans Corp properly interpreted the statute and regulations involving clear and unmistakable error in a previous decision. And we have to do that in view of the law as it existed in 1983. Even in 1983, decisions had to be made based on evidence. And in this case... The law permitted a medical doctor to sit on a panel and to render judgment. The law permitted, that is correct. But as you will notice in this case, the Veterans Court specifically said that they could not consider the decision itself to be medical evidence against the claim. I think this is where, to me, this is where the point of the case lies. Is the belief of that medical doctor back in 1983... Is that an exercise of the person's judgment as a panelist that naturally involves the background of his medical expertise, which is permitted at that point? Or is that the introduction of new evidence? Well, if you're going to consider this to be a medical opinion, which... No, no. Maybe I'm misunderstanding your question. The judgment as a panel member that's rendered by an individual that has a background in medical sciences. Okay. Is that evidence? That's what I'm asking. Is that the question? If that person looks at evidence and says, I don't find this to be credible, am I now to say that that judgment as to the credibility of evidence or the probative value of evidence, whether that's a judgment or is that new evidence? I think you argue that it's... You're arguing it's new evidence. Well, the argument is, first of all, it could be considered new evidence. On the other hand, in 1983, the medical doctor could have said, you know what? I've looked at this nexus opinion, and I think it's hokum. I don't believe it's credible at all, and therefore we're going to deny. That didn't happen here, though. The... Can I just ask you one question? Certainly. How much weight do you assign to the factual evidence that was in the record at the time of the BVA decision we're talking about that your client had full range of motion on his right side? I attribute no importance to that evidence. Well, what happens if someone, especially this doctor who was on the panel, assigned weight to that evidence? Well, you have to, first of all, look at whether that is appropriate, even at the time, whether that was evidence. And if you'll notice, in the Veterans Court decision, they did not rely on that evidence, and that's because of... Which medical court decision are you talking about? The one that we're on appeal right here. They referred to that, to the fact that there was evidence of his full range of motion. Well, they do not rely on that as being evidence against it. How do you know? I'm sorry? How do you know? Let's look at the decision in front of us insofar as it deals with the discussion of the full range of motion. Right. We're talking about the Veterans Court decision. Yeah, CAVC. Right. And it does not rely upon that if you look at... If you look at page 9 in the joint appendix here, it simply says that it's not undebatable that the board found the October 82 opinion, that would be Dr. Palmer's nexus opinion, to be deficient in some way. And that's all it says. Nowhere here does it say that that other opinion, and I presume that that's because there is precedent in the Boughton decision. And in the Boughton decision, a panel, which was also a panel decision, so it can't be overruled by another panel. I understand your position, and I'm greatly disturbed that we're looking at a decision that has this big question mark over it. The problem is that the law at that time permitted that question. It did not obligate, as it does now, for panel members to articulate a well-reasoned analysis of their decision. So they left us with a big question mark. The problem is that the law at that time permitted them to do it. Am I right on that? Well, they are allowed to use medical judgment, or were allowed. No, I'm not talking, I'm talking about, they're not even obligated at that time, they were not obligated to actually even write out the analysis of their decisions. And that's why we have to look at what evidence was there to support that decision. Because if you say that the board had no obligation in any way to base the decision on the evidence, then there can never be clear and unmistakable error. Realistically, if you don't require there to be some sort of evidence in the record at the time, then you're saying the fact that they denied it is good enough. The fact of the denial is itself dispositive. But there was evidence of the full range of motion on the right side was from 79, 88, 182 was in the record. That's correct. But if you look at the Balton decision of the Veterans Court, it says that a decision that is not, or a medical opinion that is not pertinent to the claim cannot be used. Now, in this case, that medical opinion never spoke about any connection between the shoulder and the hip. Also, if you also look... If you look at the decision that we're talking about, the BVA decision in 1983, it's in the appendix at 33 first, there is a fact finding at the end of that decision, saying his left hip bursitis is not proximally due to the result of the right shoulder injury. So that's the fact finding that undoes your case. Now, the question then is, well, are we reviewing that fact finding? That fact finding was made, as Judge Rayne has been pointing out, and it's made by that three-person board. And the rationale, the only rationale I could find, because that board also had in front of it the letter from Dr. Palmer, right? So how could that board have disagreed with Dr. Palmer? I'm saying to myself, how could they? Because Dr. Palmer said, your problem, Mr. Heim, is that somebody instructed you not to use your right hand, but use your left hand. We don't know who told him that. Well, it was the VA Rehab. Well, we don't know. That's not in the record. What's in the record is that somebody told Dr. Heim, don't use your right hand, use your left hand. And Dr. Palmer says, well, if it was by not using your left hand, which you weren't accustomed to, caused this to just stuff on the left side. So I'm looking at the fact finding in front of that 1982-83 board that says he had full range of motion in his right shoulder. So somebody looked at that and said, well, if he had full range of motion, whoever told him to use his left hand made a mistake. They didn't need to use his left hand. So yes, indeed, the use of his left hand was what resulted in his left hip injury. But it wasn't as a result of the shoulder injury. It's as a result of somebody who told him, well, don't use your right hand. And that's what was sitting there in front of this three-person person, including what Judge Raina pointed out. There was a doctor on that panel. Right. And I can't, I mean, my job is to try to figure out, if I can think, is to figure out whether that fact finding number two had any basis, any factual basis. Right. If it had a factual basis, game's over, because we can't review. Fact findings, right. So the question is, was there a factual basis to support fact finding number two? And as I read the opinion of the BVA, the only possible support for that, when you are putting in the ganish, Dr. what's-his-name's, pardon me, I should know by heart, Dr. Palmer. Right. So you have Dr. Palmer on the one hand of the fact scale, and you have the well-established medical record in front of the BVA that his right side works just fine. And Dr. Palmer's opinion cannot lie comfortably against a fact showing that the right-hand side works just fine, because if the right hand works fine, why would you shift to the left? Well, first of all, again, I come back to the fact that- But I'm not trying to be adverse to your client. I mean, I'm sensitive to the question that a cue is an error in the law, and that you win if you win on the cue. But it's hard for me to see how you can win when the facts that were in front of this deciding body, which you believe decided without any basis, because you're giving Dr. Palmer all the weight on the fact scale. And that's because- And you're not giving any credit to the three years' worth of medical exams. He was in the VA Diagnostics Center like three years in a row, saying my right side bothers me, and he was getting full medical exams, and they said, you have a normal range of motion. Well, what Dr. Palmer actually said was that he was instructed to do this to spare further injury to the right shoulder. So that is a slightly different thing than just- Is that what Dr. Palmer- Mr. Heim was instructed to do certain activities- To avoid pain. in order to avoid pain and to not accelerate deterioration. But then there's a disagreement. Somebody, as Judge Marina was pointing out, and we assume it was the doctor, just because they would know this stuff better than anybody else, somebody at that three-person board meeting in 82-83 put up their hand and said, I'm sorry, Dr. Palmer isn't right. And we were barred by statute from getting into that argument. In that case, Your Honor, there's no such thing as clear and unmistakable error. Well, sure there is. Because- If there had been nothing in this record about his right- having full range of motion of the right shoulder, then nothing in that effect at all. If the only thing in the record here was Dr. Palmer's letter, then I would agree with you right away that the BVA decision was cued because there's no way he could lose. But there is a way he could lose once you put into the record, I guess, three medical exams, bing, bing, bing in a row saying he had full range of motion of his right shoulder. Well, one problem we have there is the earlier CABC decision, which says you can't consider it negative evidence if it did not pertain to the issue. There's nothing in those medical records that say his hip bursitis was not caused. So that's a problem, and that is presumably why the Veterans Court in this case did not rely on that medical evidence. What the Veterans Court decision said, and that is what is on review here, was that they could not rule out the possibility that maybe the board disbelieved the positive evidence. What if the board in 1983 had just said nothing at all, just said denied? Would that be clear and unmistakable error? It should be, unless you're going to move to a standard that the board didn't have to explain itself, so therefore anything goes. But in 1983 they didn't. But Congress still enacted a statute about clear and unmistakable error, and if you're going to say that prior to the Judicial Review Act and so forth, if you're going to say that prior to that they didn't have to say the very fact of the denial becomes evidence, then you've got no clear and unmistakable error. You also have a due process problem here, and I realize I'm out of time. Yes. Why don't we hear from the government? We'll restore two minutes for rebuttal. Okay, fine. We'll talk about due process on rebuttal. Thank you. Mr. Evans? May it please the Court, this is not a case where there is only evidence on one side. The evidence of record went in both directions. There's only one doctor's opinion, correct? That is part of the – there is a doctor's opinion on connection, Your Honor. Yes, there are. But on the record. Yes, Your Honor. Okay. Are you going to – so are you saying that the judgment or the decision of the medical doctor on the panel, that that was evidence? No, Your Honor. Okay, good. No, I wasn't trying – I was just saying there are these three assessments that I don't believe were by doctors. Why don't you identify the names associated with – so we know what you're talking about. You're talking about Dr. Palmer on the one hand. Yes, Your Honor. That's data point number one. Yes. And there is a 1982 evaluation that you can see in the appendix at pages 63 to 66. And I apologize, I can't read the name of the examiner, but it can be seen on appendix 62. Then there is also a rating, and that's the one that says what the 1983 board finds to be essentially full range of motion in the shoulder. I'm looking at appendix 63. Is that what you said? Starting at 62, and it carries on through appendix 66 with the diagram of the shoulder usage, flexes, and directions. That is the evaluation that is specifically referenced in finding five of the 1983 board and that they refer to when they're talking about, they don't say Dr. Palmer, but they understand Dr. Palmer's opinion is of connection. But there's this almost full range of motion as shown in this evaluation. Can you look at appendix 41? Yes. Appendix 41 also, that's the 1979 evaluation. And then you had asked me earlier, Your Honor, for all three. So what are you saying, that these documents are counter or in opposition to the doctor's opinion that's on the record? What I'm saying is in 1983, the board very specifically stated they understand the claim was of a connection. However, the records show almost full range of motion. The 1983 board says we understand, we've taken into account the 1982 Veteran Administration Physician's Medical Statement. That's Dr. Palmer. Is this a new argument you're raising? I don't believe so. No, I believe this is the argument we're making, that what the board in 1983 did was evaluate the evidence. I thought everyone had agreed that Dr. Palmer was the only witness or the only medical doctor that spoke on service connection of the hip bursitis. Yes, Your Honor. If I've suggested that there's any opinion as to... You've been referring, I believe, to the evidence that's clearly in the record that Mr. Heim had full range of motion on his right side. Yes, sir. Explain to us how you're getting that on the scale so that it can be measured in context with Dr. Palmer's opinion. Yes. Why is the range of motion evidence, which is medical evidence, pertinent? It's pertinent because the 1983 board evaluated that evidence, weighted against Dr. Palmer's opinion, and found that the weight of the evidence showed no connection. How would they have weighted that? Well, Your Honor pointed out one possibility, which was sort of a causation concept. Another concept, which I think is what the Veterans Court was suggesting, is that the medical member of the panel, as a judgment, not as evidence, but as a judgment, would, as any tribunal would, would view the evidence before him. How do you know that's what happened? How do you know that it was the doctor's, the panel member who was a doctor, that it was his judgment that swayed the decision here? What if he slept during this whole thing, and one of the lawyers, because the other two panelists were lawyers, and one of the other lawyers said, well, in my experience, here's what I think, and that's how they decided? We don't know, do we? We do not have that level of statement. So how can you argue that? I mean, we don't know how that decision was reached, and that's the problem here. Well, fundamentally, the regulations in place, when this decision was reached in 1983, didn't require that. Yeah, I understand that, and that's the problem here. They didn't require it. So we've got a big question mark here. We've got due process issues. But apparently the law allowed that at the time, but I just don't want to hear any arguments that it was a medical doctor's decision that swayed the panel, or it was a learned medical opinion that cast credibility and doubt on the existing, on Dr. Palmer's opinion that was on the record, because we just don't know. Well, respectfully, Your Honor, there are two points there. The first is the standard here is clear and unmistakable error. If the answer is it could be, it might not, then the answer is there's not clear and unmistakable error. The second point I would raise is that this court, in the Kaplan decision, said that a pre-Colvin board examining a claim could rely on the medical doctor on that board, his determination that the evidence was not probative. That would not be clear and unmistakable error. Right, but we don't, our problem is Judge Raines pointed out, we don't know what happened. And I would have thought, from your perspective, the situation is such that when the BVA met back in the 80s, it had a record in front of it that had an opinion from Dr. Palmer. It also had a record in front of it that included that the veteran had full range of motion of his right arm, which would suggest that he didn't have any problems with using the right arm. And so those two data points are in the record. And you would be arguing, I think, in order for us, you have to decide the factual question of how much weight you give to the right arm freedom of motion compared to the other doctor's view. And that is beyond our jurisdiction to look at that mixing of those facts. I would agree with that, Your Honor, yes. And to say we don't... If there was no evidence of record at all that suggested that his right arm had full range of motion, then I think your adversary would have a very, very strong cue case, right? Because the only thing in the record points in her direction. Possibly. The Bouton case, which they rely on, actually deals with an issue where there's evidence of record that the board affirmatively ignores. That would be cue, yes. If the evidence says this, in that case, I believe it was a claim for connection on psychological injury, and the review said there's no evidence of a psychological injury, that's cue, ignoring it. Now, the Kaplan case said that if the evidence says one thing, but in a pre-called decision, the medical doctor says, I don't find it probative, that is not cue. That's not this case, though, because there's evidence on both sides. And, again, the board in 1983... That's also not this case because we do not know whether or not it was the medical doctor that someone discounted Dr. Palmer. That goes without saying. Who did it? I mean, it could have been the tort lawyer. It's hypothetical, a lawyer on the board. Well, it could have. But it doesn't, from your perspective, it doesn't make any difference because so long as there was a data point there that could have been used to balance against Dr. Palmer, then it's a fact question. It's a fact question, and the decision specifically says we have considered those data points, and we weigh the evidence this way. So we think that's... Which is what they said. Which is exactly what they said, and we think that's dispositive, Your Honor. We think, frankly, what Mr. Heim is seeking is really to reweigh the evidence, which this court shouldn't do. What if what happened is instead of, as was permitted under the law in 1983 the way I see it, where these panelists or a doctor and a panel could render a judgment on the basis of the credibility, the probative, and the weight of the evidence before them? So it's like a doctor says, well, I don't find Dr. Palmer's opinion credible because it's kind of iffy there. The harm is caused to one shoulder by the exercise of the other. But what if he would have said something like, well, it's my opinion, based on my review of the entire record, it's my medical opinion that Dr. Palmer is incorrect. And here's how I think we should find based on my opinion. Not the probative value of the weight or the credibility of Dr. Palmer, but if he says this is my opinion, wouldn't that be new evidence being introduced into the proceeding? I would suggest that if the statement from that board was, we've looked at this and we disagree with it, that's not new evidence. That's not what I asked, though. In all fairness, if what they said was, we understand there's that opinion. What if the opinion would have said, we find against the veteran on the basis of the medical opinion rendered by her learned brother on the panel? I suppose you would then get into the question that the Veterans Court here got into of assuming that that's evidence. That's what I'm asking. That would be evidence, wouldn't it? But it wouldn't be prejudicial because it would be them calling something evidence when what they should be saying is it's my judgment. If it is evidence, wouldn't it be prejudicial because the veteran was never given a chance to confront that evidence, call his own witnesses, doesn't even know that new evidence has been introduced? Well, if I may, let me take your hypothetical one step further. Let's assume the board's doctor says, I am a doctor and I am putting in evidence. So it's not even a question of it's my opinion, it's my judgment. If a firm says, my evidence is this and therefore based on that we rule, then it's clearly evidence. And that's Q. That's clear and non-mistakable. We're in a clear and non-mistakable error situation. If it's prejudicial. Under your, if it's prejudicial. If it's prejudicial, which is what the Veterans Court said dealing with the 2014 decision. They say, okay, the 2014 decision called it evidence. Let's be clear, it shouldn't have been called evidence. Let's stop there. Just to build on your hypothetical. The veteran at that point doesn't know that this has happened. Doesn't know that there's been new evidence introduced. Never gets to confront the doctor on the panel who rendered this evidence. Doesn't get to introduce his own witnesses or evidence. And basically what I'm describing is the due process safeguards. Okay, that's not, that would not be prejudicial. Well, if the issue is that they use the word evidence where they should have used the word in our judgment. Then there's no prejudice because what they've done is they've chosen the wrong word for something that they should have called judgment. Which is what the Veterans Court here says. That's the point. We don't know what happened. We don't know what happened. I mean, my scenario is just as viable as the one that's presented in the opinion. But unless under either scenario it's prejudicial, then it's not Q. Even if what the 2014 court board said was correct. That the 1983 board actually viewed this as evidence as opposed to viewing it as its medical judgment, as its judgment. There's still no prejudice because they should have viewed it as their medical judgment. But they'd still get to the same place. It's a term that doesn't make an actual distinction. There's evidence of record here. They're evaluating. That's, I mean, as we read the opinion, they're weighing the evidence. Well, is that true? What happened? Judge Raina's hypothetical was based on some medical facts that were deduced by the one medical doctor on the BVA on his own. Nothing that's in the record. The veteran's never heard of this before. And yet he'll end up being taxed with it in the form of the judgment, as you say. The veteran's still jumping up and down and complaining, well, I never got a chance to face those facts. I mean, nobody ever told me that I had this or that or the other thing. You've got a due process problem with the factual basis, as Judge Raina was saying. I would agree with that. Even if it's harmless error, even if it's harmless error, you can't weigh due process. No, I agree with that as well. But the point that the Veterans Court was saying is, assuming that they said it was evidence, they'd get to the same place anyway. The corrective measure, if this was evidence, as we point out, would have been to file a motion for reconsideration or be here raising it as cue. But fundamentally, the point is, the board's opinion in 1983 isn't evidence. It's judgment. It's what it's supposed to do. It's supposed to weigh the evidence in front of it, which is what it did based on its statement, and come to a conclusion, which is what it did, that the overall evidence, taking these shoulder has almost full range of motion versus this opinion from Dr. Palmer, does not show connection. For those reasons, Your Honors, first we think this matter should not be heard because the jurisdiction should be dismissed. But to the extent the court wants to view the merits, the opinion below does not show clear and unmistakable error and should be affirmed. Thank you. Going back to the decision of the CABC in this case, it was aware of the almost full range of motion evidence in the record, wasn't it? It cited that at page 2 in its opinion. It did. And then at pages 8 to 9, it seems to draw a distinction, not with a great deal of clarity, but it talks about that the board did not weigh the evidence or make determinations as to its probative value. So there's at least a suggestion there that the Veterans Court was looking at both this record evidence that it cites in 1982 and separately the question of the judgment. Thank you. We've already discussed this whole issue of whether that's evidence or not. And I would just again direct the court to the Boutman decision, which specifically said that medical evidence that does not weigh on the particular issue cannot be considered negative evidence. Beyond that, though, I would like to get to this due process question. And even more than the hypothetical that Judge Reina raised, we don't even have here a situation where someone at the board possibly said, I don't believe this evidence. My medical judgment says it's false. In this case, there's nothing. And all that the Veterans Court decision said is, well, we can't rule out the possibility that maybe they disbelieved the positive evidence. Now, in that situation, the actual situation before us, Mr. Haim has, there's no due process here whatsoever. He doesn't even know why the decision, not only can he not counter this medical judgment, he doesn't even know that such a thing was made. At that time, there were only, and the dissent in the Veterans Court decision. There was a fact-finding made by the three-person board in the 80s. They didn't think there was any connection between his right side and his left side injury. Well, actually. Fact-finding number two. He knows that decision was made. But he doesn't know what that is based on. And under the rules for filing a motion for reconsideration, you have to very specifically say what you felt the error was that they made. And it's not good enough to simply say, I disagree with the fact-finding. He would have to be able to say, well, I disagree with this because the board member said whatever. And have the opportunity to present evidence. He could have objected to that. He could have said, wait a second. How can you make that fact-finding two in the light of the presence of Dr. Palmer's statement? He could have gone direct on appeal on that and said, excuse me. No, you couldn't directly appeal because there was no appeal at the time. Well, I understand that. If there were a direct appeal in this case, I mean, if this happened today, we would certainly appeal it. And I have a feeling it would be reversed. But that's not our problem. Is Q a cure for the absence of an appeal right in the 80s? In a sense, it is because it is a way to challenge those decisions, which could not be challenged directly. It's going to open up all of the old decisions then? Well, Q is really the only way to challenge the old decisions. But in this case, the veteran is deprived of due process if he can be denied based on an unstated, unspoken disbelief based. Not unstated. I mean, the BBA decision. Well, they do not say that Dr. Palmer's evidence was. No, but it sets up, it acknowledges Dr. Palmer's statement. Dr. Palmer's statement is 100% going to the bank. It says your left side deficiency was caused by your right side deficiency. And so. Well, it was caused by the treatment for the right side. Yes, but then you have this problem on your left side because of what the right side was. That's Dr. Palmer's clear about that. Right. And so he's going to prevail on his claim for benefits for a left side deficiency unless something comes up to get in the way. Right, right, right. And the only something that can come up to get in the way that I could see or anybody else could see in that 82 BBA decision was the established fact that he had full range of motion on the right hand side. And then you say, well, what does that have to do with the price of tea in China? I don't know. I don't know. But could it have something to do with the price of tea in China? Yeah. In somebody's mind, the fact finder, these three people, lay aside whether it was the doctor or not, these three people. These three people decided that Dr. Palmer wasn't sufficient to give him connection. That's fact finding, too. And so I don't see why we should be put in the position of trying to go back and decide whether that was factually mistaken for them to enter fact finding, too, as opposed to an opposite fact finding based on Dr. Palmer. I'm out of time. Do you want me to answer the question? Just very briefly is you're not being asked to do that. What you're being asked to do is look at the precedential decision of the Veterans Court, which says it is enough to say we can't rule out the possibility that maybe somebody disbelieved the evidence. That's what the Veterans Court says. In precise words? Basically, yes. Show me. Let's look at those words. You take a look at page nine of the joint appendix. Page nine of the appendix. It is not undebatable that the board found the 1982 opinion to be deficient in some way. And then when we look down to the footnote, to be clear, the court does not conclude that the board found it to be deficient. Rather, the court cannot rule out the possibility that the board did so. Now, if, in fact, the rule of law on CUE is that any time a reviewing court cannot rule out the possibility that maybe somebody didn't believe the evidence, how can you ever have CUE? The very fact that they denied the claim would be evidence to say, well, somebody must have disbelieved it. So there you go. They denied it. And that leaves it. CUE requires that you show that you would win. An error has to be outcome dispositive, not possibly outcome dispositive. Outcome dispositive. Right. But the court is. On the merits of the underlying claim. But the court is saying that the reason they find this to be not dispositive is because maybe the board in 1983 disbelieved the evidence. And that's what the court here says. And that's the rule that will stand if this case stands. OK. Thank you. Thank you both sides of the case.